O

NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DAHLIA M. JIMENEZ, | ) | Case No. CV 10-02587 DDP (JEMx) |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING DEFENDANT'S MOTION** |
| | ) | **FOR SUMMARY JUDGMENT** |
| v. | ) | |
| | ) | [Docket No. 30] |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Defendant and Counterclaim-Plaintiff United States of America ("Defendant") brings this Motion for Summary Judgement ("Motion") against Plaintiff and Counterclaim-Defendant Dahlia M. Jimenez ("Dahlia Jimenez"). Having reviewed the parties' moving papers and heard oral argument, the court grants the Motion and adopts the following Order.

**I.    BACKGROUND**

There are no genuine disputes as to the following facts. Pleasant Care Corporation and its four related subsidiaries ("Pleasant Care") operated approximately thirty skilled nursing facilities and residential care facilities, and had approximately 3,000 employees. During the 2006 and 2007 payroll tax periods at

issue, Pleasant Care failed to pay to the Internal Revenue Service ("IRS") all of the federal income and social security taxes it had withheld from its employees' wages (collectively, "payroll" or "trust fund" taxes). (Opp'n at 5.) Emmanuel Bernabe was the President of Pleasant Care. Pleasant Care also had an Executive Vice President, a Secretary and Treasurer, and a Compliance Officer. Dahlia Jimenez was the Vice President of Finance and a named board of director. (Id. at 6-12, 20.)

Dahlia Jimenez's total salary and deferred compensation were $93,021 in 2006 and $109,864 in 2007. As part of her duties, Dahlia Jimenez managed billing and collections for Pleasant Care. (Mot. at 2-3.[1]) Dahlia also received and signed batches of checks prepared by Accounts Payable. The checks were grouped by expense priority. Before August 2006, the first priority was payroll, including payroll taxes. In August 2006, the procedure changed, and payroll taxes were no longer first priority. (Id. at 4-5.) Pleasant Care's relevant checking account required two signatures from the three authorized signatories - Emmanuel Bernabe, Dahlia Jimenez, and the Secretary and Treasurer. Dahlia Jimenez typically reviewed the checks, provided the first signature, and then gave the checks to the Secretary and Treasurer for her signature. Dahlia Jimenez also had a signature stamp for Emmanuel Bernabe, which she sometimes used to release checks for payment without further review. She signed and stamped at least one check for more than $15,000. (Id. at 5-7.) She also signed checks paying

---

[1] Notwithstanding Dahlia Jimenez's objections to Defendant's characterization of her duties, as discussed below, all of Defendant's basic descriptions come from Dahlia Jimenez's own deposition and are not in genuine dispute.

2

creditors other than the United States, knowing that the payroll taxes had not been paid. (Id. at 8.)

In addition, Dahlia Jimenez opened at least 100 corporate bank accounts for Pleasant Care, and signed leases involving thousands of dollars. (Id. at 3-4.) Her duties also included transferring funds from Pleasant Care's general account to its payroll account, to ensure there were sufficient funds to cover payroll, when the Secretary and Treasurer was not in the office. Dahlia Jimenez was significantly involved in the hiring and firing of employees as well. (Id. at 7.)

On the other hand, viewing the evidence in the light most favorable to Dahlia Jimenez, Emmanuel Bernabe made the major financial and management decisions for Pleasant Care, and had the final say on all decisions. (Opp'n at 6-10.) Dahlia Jimenez also alleges that Emmanuel Bernabe required her to follow his specific creditor payment instructions at all times, and that her official job title therefore overstates her actual authority. (Id. at 10-16.) During the relevant tax periods, Pleasant Care was also legally required to follow state regulatory laws for patient care, as set forth in a Corporate Integrity Agreement and Permanent Injunction. Pleasant Care's finances were further restricted starting in 2007, after a lender found out about the unpaid payroll taxes. (Id. at 11-12.) Notwithstanding these limitations, Dahlia Jimenez wanted to pay the taxes and was frustrated that they were not being paid. (Id. at 16.)

On September 30, 2009, the IRS sent notice of intent to assess against Dahlia Jimenez the trust fund recovery penalty ("TFRP") provided by 26 U.S.C. § 6672 ("Section 6672"). On October 13,

2009, the IRS assessed the TFRP against Dahlia Jimenez. (Mot. at 8-9.) After meeting the relevant procedural requirements, Dahlia Jimenez filed this action against Defendant on February 9, 2010, alleging that the TFRP assessment was improper. (Compl. ¶¶ 10-18.)

Defendant now seeks summary judgment that Dahlia Jimenez is liable for the TFRP under Section 6672. Defendant argues that it is entitled to summary judgment because the undisputed facts demonstrate that Dahlia Jimenez was 1) a "responsible person," who 2) willfully failed to pay the required payroll taxes. Dahlia Jimenez contends, to the contrary, that there are genuine issues of material fact as to these two elements.

**II. LEGAL STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The evidence must be viewed in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. Id. at 255.

It is not enough, however, for the nonmoving party to rest on the "mere allegations or denials of his pleadings." Id. at 259. Instead, the nonmoving party must go beyond the pleadings to designate specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The "mere existence of a scintilla of evidence" in support of the

4

nonmoving party's claim is insufficient to defeat summary judgment. Anderson, 477 U.S. at 252.

In a TFRP case, "the government bears the initial burden of proof." Oliver v. United States, 921 F.2d 916, 919 (9th Cir. 1990). The government may normally satisfy this burden "by introducing into evidence its assessment of taxes due." Id. "[T]he taxpayer then has the burden of proof with respect to both his own claim and the government's counterclaim." Id. Here, there is no dispute that the government satisfied its initial burden by introducing its relevant tax assessments into evidence. (Mot. at 10.) Dahlia Jimenez therefore bears the ultimate burden of proving that she does not meet at least one of the two TFRP elements under Section 6672.

**III. DISCUSSION**

The Internal Revenue Code requires employers to withhold federal social security and individual income taxes from their employees' wages. Davis v. United States, 961 F.2d 867, 869 (citing 26 U.S.C. §§ 3102(a) and 3402(a)). Employers collect these tax amounts each salary period, but pay them to the IRS on a quarterly basis. In the interim, the employer holds the collected taxes in trust for the United States. Davis, 961 F.2d at 869. If an employer ultimately fails to pay over the collected taxes, the government still credits the employees with the payment. Accordingly, to protect against revenue losses, the tax code provides the United States a variety of ways to recover the taxes from the employer. Id. (citing Slodov v. United States, 436 U.S. 238, 243 (1978), and 26 U.S.C. §§ 6321, 6672, 7202, and 7215).

1    Section 6672, in particular, authorizes the government to hold
2 "responsible persons," such as corporate officers, personally
3 liable for a civil penalty equal to the amount of the delinquent
4 trust fund taxes - i.e. the trust fund recovery penalty.  See
5 Davis, 961 F.2d at 869-70.  Under Section 6672, a responsible
6 person is anyone "required to collect, truthfully account for, and
7 pay over" the trust fund taxes.  Such a person is liable for the
8 TFRP if they willfully fail to comply with these duties.
9    The courts have further elaborated on these two elements.  In
10 the Ninth Circuit, "responsibility is a matter of status, duty, and
11 authority."  Purcell v. United States, 1 F.3d 932, 937 (9th Cir.
12 1993) (internal quotation marks omitted).  An individual is
13 therefore a responsible person if she "had the authority required
14 to exercise significant control over the corporation's financial
15 affairs, regardless of whether [she] exercised such control in
16 fact."  Id.  Moreover, "[i]nstructions from a superior not to pay
17 taxes do not . . . take a person otherwise responsible under
18 section 6672(a) out of that category."  Id. (quoting Brounstein v.
19 United States, 979 F.2d 952, 955 (3rd Cir. 1992)).
20    The Ninth Circuit has also considered various factors, none of
21 which is alone determinative, in deciding responsible person
22 status.  An individual is more likely to be found responsible if he
23 or she: 1) holds corporate office; 2) has check-signing authority;
24 3) can hire and fire employees; 4) manages the day-to-day
25 operations of the business; 5) prepares payroll tax returns; 6)
26 signs financing contracts; and 7) determines financial policy.  See
27 United States v. Jones, 33 F.3d 1137, 1141 (9th Cir. 1994); Jordan
28 v. United States, 359 F. App'x 881, 882 (9th Cir. 2002).

6

"Willfulness," for purposes of Section 6672, means only "a voluntary, conscious and intentional act to prefer other creditors over the United States." Buffalow v. United States, 109 F.3d 570, 573 (9th Cir. 1997) (internal quotation marks omitted). If a responsible person knows that payroll taxes are delinquent, and uses corporate funds to pay other expenses, the failure to pay the taxes is willful. See id.

Here, contrary to Dahlia Jimenez's arguments, there is no genuine dispute whether she is a responsible person. Applying the aforementioned factors: Dahlia Jimenez was a high-ranking officer of a large corporation with multiple subsidiaries. She was one of three officers with authority to sign corporate checks, and she did in fact sign checks during the relevant tax periods, including checks for many thousands of dollars. Dahlia Jimenez also had significant involvement in hiring and firing employees. Further, while two signatures were required to endorse a check, she had and sometimes used a stamp for the President's signature - thereby endorsing checks without any further approval. Dahlia Jimenez was also involved in important day-to-day financial operations, such as managing billing and collections, opening numerous corporate bank accounts, and signing substantial leases. For all these reasons, she was clearly a responsible person, with significant control over Pleasant Care's financial affairs.

It is true that, viewing the evidence in Dahlia Jimenez's favor, Emmanuel Bernabe made the major business decisions and had the final say on all decisions. Most relevant here, he required Dahlia Jimenez to follow set creditor priorities. But under Ninth Circuit precedent, following orders does not protect an otherwise

7

responsible person from Section 6672 liability.[2]  Here, as discussed, all of the evidence establishes that Dahlia Jimenez was a responsible person - not an employee performing mere clerical or ministerial duties, as Dahlia Jimenez contends.  Therefore, that she was following Emmanuel Bernabe's instructions with regard to payroll tax priority is immaterial.  Indeed, the undisputed facts establish that Dahlia Jimenez exercised substantial financial authority outside of Emmanuel Bernabe's control, as she sometimes authorized checks without further review.

Finally, as to wilfulness, there is no dispute that Dahlia Jimenez signed checks paying creditors other than the United States, knowing that the payroll taxes had not been paid.  Under Ninth Circuit precedent, it is irrelevant that Dahlia Jimenez allegedly wanted to pay the taxes, and that Pleasant Care was constrained by state regulatory law and one of its lenders.  As the Buffalow court explained, addressing a similarly sympathetic situation, good motive does not excuse a knowing failure to pay trust fund taxes.  109 F.3d at 573-74.  Further, this was not a situation where external controls made paying the taxes impossible.  If necessary, Pleasant Care could have shut some or all of its facilities to meet lender-imposed restrictions and ensure its patients' rights were not violated.  Thus, because Dahlia Jimenez knew that Pleasant Care's payroll taxes were delinquent, yet paid other creditors, she willfully failed to pay the taxes.

---

[2] In so holding, the court does not endorse Defendant's position that there is no so-called "Nuremberg defense" to liability.  The court only follows binding precedent that an otherwise responsible person is not excused by orders from his or her superior.

8

**IV. CONCLUSION**

For all these reasons, the court grants Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

Dated: December 19, 2011
　　　　　　　　　　　　　　　　　DEAN D. PREGERSON
　　　　　　　　　　　　　　　　　United States District Judge